JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 10-05287 RGK (AJWx) | Date | September 26, 2011 |
|---|---|---|---|
| Title | MICHAEL RANDALL v. UNUM LIFE INSURANCE CO., UNUM LONG TERM DISABILITY PLAN | | |

| Present: The Honorable | R. GARY KLAUSNER, U.S. DISTRICT JUDGE | | |
|---|---|---|---|
| Sharon L. Williams | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**      **(IN CHAMBERS)** Order and Judgment Re Court Trial

I.      **INTRODUCTION**

Michael Randall ("Plaintiff") has sued Unum Life Insurance Company ("Unum") and Unum Long Term Disability Plan ("Plan") (collectively, "Defendants") for Breach of Plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiff seeks declaratory relief and recovery of plan benefits. Plaintiff's action arises out of Defendants' denial of his claim for long-term disability ("LTD") benefits under the Plan. The parties have submitted their trial briefs to the Court for a bench trial. For the following reasons, the Court grants judgment in favor of Defendants.

II.     **JUDICIAL STANDARD**

A determination that denies benefits under an ERISA plan is reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). When the benefit plan expressly grants discretion to the administrator, a "highly deferential" abuse of discretion standard applies. *Id.*; *see also Barnett v. Kaiser Foundation Health Plan, Inc.*, 32 F.3d 413, 415-17 (9th Cir. 1994). Under the deferential standard, the district court will overturn the administrator's decision only if the decision is arbitrary and capricious. *Id.*

When a de novo standard of review applies, the district court can review evidence extrinsic to the administrative record. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 970 (9th Cir. 2006). In reviewing the denial of benefits for abuse of discretion, however, the district court must consider only the administrative record. *Id.*

Here, the Plan expressly grants discretion to Unum to determine eligibility under the Plan.[1] Accordingly, the Court reviews Unum's determination under the abuse of discretion standard. In doing so, the Court is limited to the evidence contained in the Administrative Record.

In ERISA cases, the abuse of discretion standard is malleable under certain circumstances. One such circumstance is when a conflict of interest exists. When the "benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." *Firestone*, 489 U.S. at 115 (citations omitted). A "structural" conflict of interest exists where the insurer acts as both the plan administrator and the funding source for benefits. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 965 (9th Cir. 2006). That is the case here, as Unum is the sole source of funding for the Plan. When Unum denies benefits to claimants it retains money in its coffers. Because of this conflict, the Court must weigh all the facts and circumstances and decide how much to credit the plan administrator's reason for denying coverage. *Abatie*, 458 F.3d at 968. However, the weighing of facts remains within the construct of the abuse of discretion standard. *Id*.

### III.   RELEVANT PLAN PROVISIONS

Under the Plan, LTD benefits are available to eligible employees who (1) qualify as Disabled throughout the Elimination Period; (2) remain Disabled beyond the Elimination Period; and (3) file a written proof of claim within the required time frame. (Administrative Record ("AR") UA-CL-LTD-000132 and 000123.)

The Elimination Period is the latter of (1) 180 days, or (2) the date the employee's Short Term Disability payments end, if applicable. (AR UA-CL-LTD-000132.) Under the Plan an employee is considered disabled when he is under the regular care of a physician, and Unum determines that (1) the employee is limited from performing the material and substantial duties of his regular occupation due to sickness or injury; and (2) the employee has a 20% or more loss in his indexed monthly earnings due to the same sickness or injury.[2]

### IV.   FINDINGS OF FACT

Unum issued Group Long Term Disability Insurance Policy No. 544431 001 ("Policy") to Unum Group, with an effective date of January 1, 2000. Unum Group provides LTD insurance coverage to its regular, active employees through the Plan. The Plan is an employee benefit plan within the meaning of

---

[1] Unum's Group Agreement with Plaintiff states:

> When making a benefit determination under the policy, [Defendant] has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy.

(Administrative Record, UA-CL-LTD-000128.)

[2] After 24 months of payments, the employee is considered disabled when Unum determines that, due to the same sickness or injury, the employee is unable to perform the duties of any gainful occupation for which the employee is reasonably fitted by education, training, or experience. (AR UA-CL-LTD-000132.) However, for disabilities due to mental illness, the Plan imposes a limited payment period up to 24 months. (AR UA-CL-LTD-000139.)

ERISA. (AR UA-CL-LTD 000117, 000120, and 000128.)

From November 1999, through September 24, 2008, Plaintiff was employed by Unum Group as a Medical Consultant.[3] During these years, Plaintiff received generally positive performance reviews.[4] On February 28, 2008, Plaintiff was called into the Human Resources department because of complaints made by other employees regarding alleged "hostile and intimidating" behavior on the part of Plaintiff during a staff meeting. (AR UA-CL-LTD 000080.) On April 15, 2008, despite disapproval from Plaintiff, Joan Afchoff ("Afchoff") was hired as the lead medical director at Unum to manage Plaintiff and his group. *Id*. On June 6, 2008, Plaintiff received a final warning with a 90-day probation period. *Id*. The warning stated that Plaintiff was argumentative and confrontational. *Id*. The warning also stated that Plaintiff failed to abide by company policy and that his quality assurance scores were the lowest in the last two quarters among all physicians in the company. *Id*.

On July 8, 2008, Plaintiff filed a short term disability claim. (AR UA-CL-LTD-000040-000042, UA-CL-LTD-000174.) Plaintiff's attending physician ("AP"), Dr. Ronald Persuaud, diagnosed Plaintiff with Adjustment Disorder with anxiety and depressed mood. (AR UA-CL-LTD 000040.) Unum approved and paid the claim benefits for the maximum duration of twenty-six weeks. (AR UA-CL-LTD 001545; UA-CL-LTD 000754, "UnumProvident Employees Short-Term Disability Plan," Section 1.15.)

On September 19, 2008, Plaintiff received a call from Afchoff and Dorothy Pace ("Pace"), a Unum Group human resources representative, regarding confidential information that Plaintiff had emailed in June and July 2008. (AR UA-CL-LTD 000081.) During this conversation, Plaintiff informed Afchoff and Pace that Dr. Persuaud would likely return him to work the following week. *Id*. On September 24, 2008, Afchoff and Pace called Plaintiff and informed him that his employment with Unum was terminated for violating company privacy rules. (AR UA-CL-LTD 00081; UA-CL-LTD 000050; UA-CL-LTD 000178.)

### A.     **Long-term Disability Claim and Denial**

As Plaintiff approached the end of his short-term disability term, Plaintiff filed a claim for long-term disability ("LTD") benefits. Unum formally acknowledged receipt of the claim by letter dated, December 22, 2008. (AR UA-CL-LTD 000112-000114.)

At the time Plaintiff filed his LTD claim, his medical record included treatment notes and evaluations primarily from two treating physician, Dr. Persuaud and Dr. Thomas Curtis. On July 17, 2008, Dr. Persuaud signed an Attending Physician Statement diagnosing Plaintiff with Adjustment Disorder With Anxiety and Depressed Mood. (AR UA-CL-LTD 000040.) Dr. Persuaud's July 17, 2008 Behavioral Health Capacities Evaluation placed Plaintiff's psychiatric status as mostly mild to moderately severe impairment. (AR UA-CL-LTD 000041.) On September 24, 2008, Dr. Persuaud submitted a second Behavioral Health Capacities Evaluation, which placed Plaintiff psychiatric status as no impairment to moderate impairment. (AR UA-CL-LTD 000060.)

---

[3] According to Plaintiff's Performance Reviews, Plaintiff's title was "Medical Director" from 2000 to 2005. From 2006 to 2007, Plaintiff's title was "Medical Consultant." (AR UA-CL-LTD 000830-000856.)

[4] Plaintiff's Performance Reviews indicate that his overall performance rating each year fell within the "Strong" range, with the exception of his 2006 review, which fell within the "Solid" range.

After Plaintiff's termination on September 24, 2008, he started seeing Dr. Curtis, to whom Plaintiff was referred during the investigation of a Worker's Compensation claim Plaintiff also filed. On October 22, 2008, Dr. Curtis wrote an Initial Evaluation and Report. (AR UA-CL-LTD 000078-000093.) The report stated that Plaintiff's psychological test results were abnormal. (AR UA-CL-LTD 000085.) The report found Plaintiff to be "temporarily partially impaired on a psychological basis while continuing to consult on his own time at home," and in need of emotional treatment. (AR UA-CL-LTD 000088-000089.) The report further stated, "[Plaintiff's] emotional state should not be considered as permanent and stationary at this time." (AR UA-CL-LTD 000088.) On November 14, 2008, Dr. Curtis submitted an Attending Physician Statement that diagnosed Plaintiff with Depressive Disorder Not Otherwise Specified. (AR UA-CL-LTD 000066.) Dr. Curtis stated that Plaintiff could not work for anyone yet, advised Plaintiff not to return to work, but specified February 14, 2009 as the expected return to work date. (AR UA-CL-LTD 000067.)

On December 22, 2008, Unum interviewed Plaintiff about his LTD claim. (AR UA-CL-LTD 000173 - 000182.) During the interview, Plaintiff described the conflict with Afchoff, the final warning, the subsequent termination, and his feelings of injustice, confusion, and depression as a result of those incidents. (AR UA-CL-LTD 000174.) Plaintiff stated that, as a result of his mental condition, he has trouble focusing on details and concentrating for long periods because it brings back memories of his time at Unum Group. (AR UA-CL-LTD 000178.) Plaintiff described his daily activities as making sure his teenaged son has breakfast and getting him off to school, reading the newspaper, listening to audiotapes and radio shows, doing mortgage paperwork, communicating with friends on computer and phone, napping, running errands, going on walks if he is up to it, and going to his doctor's appointments. (AR UA-CL-LTD 000176.) Plaintiff also stated that, for the past couple of years, he has worked, and continues to work, 2-3 hours per week for the United States Postal Service ("USPS"). (AR UA-CL-LTD 000177.) Plaintiff described the USPS work as a flexible, consisting of limited reviews of medical records. *Id*. In the interview, Plaintiff also stated that he checked around his area for other employment with insurance carriers, but found no open positions. (AR UA-CL-LTD 000178.)

On February 2, 2009, Unum forwarded Plaintiff's medical records to Dr. Philip Candilis, an independent physician, for review and evaluation. (AR UA-CL-LTD 000368-000369.) Dr. Candilis made multiple attempts to contact Dr. Curtis, but Dr. Curtis never returned his messages. (AR UA-CL-LTD 000415-000420.) In a report dated February 10, 2009, Dr. Candilis noted that he reviewed Plaintiff's treatment notes from Drs. Curtis and Persuaud, claim forms and reports, and Plaintiff's job description. (AR UA-CL-LTD 000424.) Dr. Candilis found that, although Plaintiff's symptoms were consistent with Adjustment Disorder, Drs. Persuaud's and Curtis's assessments were not complete. (AR UA-CL-LTD 000426-000427.) Dr. Candilis also stated that the available medical evidence appeared to undermine Plaintiff's claim, and opined that Plaintiff's condition was influenced by motivations of anger with the employer and hope for compensation through disability. (AR UA-CL-LTD 000427.) Dr. Candilis further stated that the "putative functional impairment does not appear to affect his technical ability to work in his chosen profession." *Id.* To give Dr. Curtis an opportunity to comment or provide further information, Unum sent a letter to Dr. Curtis and attached Dr. Candilis's report. (AR UA-CL-LTD 000433-000444.) Unum never received a response. (AR UA-CL-LTD 000433.)

On March 11, 2009, Unum retained a second independent physician, Dr. Henry Conroe, to review Plaintiff's file. (AR UA-CL-LTD 000448-000449.) Dr. Conroe reviewed records and reports of Drs. Persuaud, Curtis, and Candilis, the relevant job description, Plaintiff's claim forms, and Plaintiff's worker's compensation forms. (AR UA-CL-LTD 000460.) In a report dated April 2, 2009, Dr. Conroe found that Dr. Persuaud's initial assessment had provided little description of his observations, no mental status information regarding Plaintiff's cognitive functioning, and little about his activities of daily living. (AR UA-CL-LTD 000460.) Dr. Conroe also found that Dr. Persuaud's later evaluation of

Plaintiff appeared to be based on Plaintiff's self-reporting, as Dr. Persuaud's records contained no mental status or activities of daily living confirmation. As to Dr. Curtis's assessments, Dr. Conroe noted that Dr. Curtis's dual role of Plaintiff's treater and Worker's Compensation evaluator could hamper the objectivity of the assessments and interfere with the therapeutic relationship. (AR UA-CL-LTD 000461.) Moreover, upon review of the reports and records from Dr. Curtis's office, there was no evidence supporting Plaintiff's impairment. (AR UA-CL-LTD 000461-000462.)

On April 15, 2009, Unum conducted a vocational review to confirm that Plaintiff's job duties at Unum Group were consistent with the way the occupation is performed in the national economy, as required by the Policy. (AR UA-CL-LTD 000157; UA-CL-LTD 000487-000488.) Unum also confirmed that Plaintiff did not have a physical impairment precluding him from working in his occupation. (AR UA-CL-LTD 000475, 000479, 000490-000491, 000496.)

Based on its investigation, Unum determined that Plaintiff was not disabled, as defined by the Policy. (AR UA-CL-LTD 000511.) Unum denied Plaintiff's LTD claim by letter, dated April 23, 2009. (AR UA-CL-LTD 000503-000508.)

### B.   Plaintiff's Appeal

Plaintiff appealed Unum's decision on October 20, 2009. (AR UA-CL-LTD 000789.) Prior to the appeal, at the request of Plaintiff's attorney,[5] Dr. Castellon performed an evaluation on Plaintiff on October 5, 2009. (AR UA-CL-LTD 001233.) Dr. Castellon drew from the following sources of information: clinical interview with Plaintiff, Plaintiff's responses to a variety of standardized rating forms, review of records provided by Plaintiff's counsel, and Plaintiff's participation in a 6-hour neuropsychological evaluation. *Id*. In his report, Dr. Castelon concluded that (1) there was no evidence suggesting an attempt by Plaintiff to embellish or exaggerate either the presence or degree of cognitive deficit; (2) there was evidence of very subtle cognitive compromise and more pronounced psychiatric and emotional dysfunction; and (3) the psychiatric issues seen on evaluation were likely disabling. (AR UA-CL-LTD 001254-001255.) As to the third point, Dr. Castelon explained that Plaintiff's psychiatric symptoms would impact Plaintiff's ability to return to work as a full-time medical consultant. (AR UA-CL-LTD 001254.) Dr. Castelon further stated that, while Plaintiff clearly has the cognitive capacity to do the type of work he has done on a reduced scale (as evidenced by his part-time work for the USPS), it is likely important that Plaintiff does not have to interact with any supervisors or colleagues, and that the lack of strict time demands probably helps Plaintiff to produce on the reduced scale. *Id*.

On November 20, 2009, Dr. Curtis issued an Evaluation and Permanent and Stationary Report. In this report, Dr. Curtis made the same psychiatric diagnosis as his October 22, 2008 evaluation, and stated that Plaintiff has been temporarily totally disabled from July 8, 2008 (his last day of work at Unum Group) to the present, and continuing until his condition becomes more stabilized. Dr. Curtis found that the degree of permanent emotional impairment was marked, significantly impeding useful functioning. (AR UA-CL-LTD 001284 and 001310.) Dr. Curtis stated that, assuming continued psychotherapy as needed, Plaintiff psychiatric condition should be considered permanent and stationary. (AR UA-CL-LTD 001310.)

Unum conducted a *de novo* review of Plaintiff's claim, including a review and evaluation of the raw data from Dr. Castellon's testing. (AR UA-CL-LTD 001271.) To aid its review, Unum sent Plaintiff's file to Drs. William Barr and Eric Goldsmith. (AR-UA-CL-LTD 001363 and 001372.) On

---

[5] Kantor & Kantor, Plaintiff's counsel at the time, has since withdrawn as counsel of record. Plaintiff is now proceeding *in pro se*.

December 30, 2009, Dr. Barr reported that, with regard to Plaintiff's neuropsychological testing, Plaintiff tested well within normal limits on the vast majority of the tests. (AR UA-CL-LTD 001404.) Only 5 of 76 scores were in the impaired range, which shows less impairment than the 8-15 scores of impairment one would expect by chance alone. *Id*. Dr. Barr concluded that the test findings provided weak support for the presence of even subtle cognitive impairment, and failed to demonstrate executive dysfunction or memory impairment that would be expected in someone suffering from the debilitating cognitive effects of depression. (AR UA-CL-LTD 001404-001405.)

Dr. Goldsmith submitted a report, dated January 21, 2010. (AR UA-CL-LTD 001461.) In his report, Dr. Goldsmith found none of the previous evaluations, treatment plans, or notes supported either a diagnosis of Depressive Disorder or serious symptoms or impairment in occupational functioning. (AR UA-CL-LTD 001480.) Rather, Dr. Goldsmith found Plaintiff's symptoms and treatment consistent with Adjustment Disorder, and a psychiatric level of distress specific to Unum Group but not consistent with pervasive psychiatric impairment. (AR UA-CL-LTD 001481.)

Finally, Unum submitted Plaintiff's file for Dr. Stuart Rubin to determine if any physical restrictions and limitations in the relevant time period would render Plaintiff disabled. (AR UA-CL-LTD 001384.) The records showed a statement by Dr. Pietruszka on March 2, 2009 indicating that "the patient was placed on temporary and total disability for a period of one month on an internal medicine basis." (AR UA-CL-LTD 001536.) Based on his review, Dr. Rubin found that Plaintiff's records did not support any physical restrictions or limitations from July 8, 2008 until March 2, 2009. Moreover Dr. Rubin found that, while restrictions and limitations did begin on March 2, 2009, there was no information explaining to what extent and how the impairments noted in Dr. Pietruszka's exams translated into restrictions and limitations. *Id*. Unum sent Dr. Rubin's report to Dr. Goldsmith to determine the impact of any medication side effects. (AR UA-CL-LTD 01494.) On February 2, 2010, Dr. Goldsmith concluded there was no documentation of impairing side effects from the medications Plaintiff was taking, and that the record did not support restrictions and limitation. (AR UA-CL-LTD 001508 and 001510.)

Based on its investigation, Unum determined that Plaintiff did not meet the Policy's definition of disability since his last day worked on July 8, 2008. (AR UA-CL-LTD 001540.) On February 18, 2010, Unum upheld the denial of Plaintiff's LTD claim. (AR UA-CL-LTD 001542-001547.)

## V.   **CONCLUSIONS OF LAW**

The Plan provides LTD benefits to eligible employees[6] who, among other things, qualify as Disabled throughout the Elimination Period[7] and remain Disabled beyond the Elimination Period. (AR UA-CL-LTD-000132 and 000123.) An employee is Disabled when he is under the regular care of a physician, and Unum determines that (1) the employee is limited from performing the material and substantial duties of his regular occupation due to sickness or injury; and (2) the employee has a 20% or

---

[6] Eligible employees are all regular employees in active employment, working at least 20 hours per week. (AR UA-CL-LTD 000120.) Active Employment means working for the employer for earnings that are paid regularly and performing the material and substantial duties of the regular occupation. (AR UA-CL-LTD 000154.)

[7] The Elimination Period is the latter of (1) 180 days, or (2) the date the employee's Short Term Disability payments end, if applicable. (AR UA-CL-LTD-000132.)

more loss in his indexed monthly earnings due to the same sickness or injury.[8]

The Job Description of Plaintiff's occupation requires, in pertinent part, (1) analytic skills and the ability to define, research, and solve problems; (2) written and oral communication skills; (3) organizational skills; and (4) ability to turn in timely and quality work product. (AR UA-CL-LTD 000487-000488.)

Defendants contend that its denial of Plaintiff's LTD disability claim was proper because Plaintiff was not disabled on July 8, 2008, and through the Elimination Period and beyond. Plaintiff argues that Defendants abused its discretion by failing to provide a full, fair and independent review. For the following reasons, the Court finds that Defendants did not abuse its discretion in denying Plaintiff's LTD claim.

In conducting its reviews, Unum interviewed Plaintiff and obtained Plaintiff's relevant medical records. The records show that, as of July 8, 2008, Plaintiff was still working 2-3 hours per week as a medical consultant for the USPS. While this evidence, alone, fails to support Unum's denial of the claim, the records also indicate that after Plaintiff's September 2008 termination, Plaintiff checked around the area for employment with other insurance carriers. Although the extent of Plaintiff's job search is unclear, this evidence indicates that Plaintiff, himself, did not consider himself too impaired to perform a similar job for a different employer.

As to Plaintiff's medical diagnoses and assessments, Unum referred Plaintiff's file to five independent physicians. The independent physicians consisted of three psychiatrists (Drs. Candilis, Conroe and Goldsmith), a psychologist (Dr. Barr), and a pain management and rehabilitation specialist (Dr. Rubin). These doctors cumulatively determined that the evidence supported a diagnoses of Adjustment Disorder and physical pain. However, the doctors also consistently found that, while Plaintiff may be specifically impaired from working for Unum, Plaintiff was not impaired from working as a medical consultant generally. Specifically, in reviewing the reports and evaluations of Drs. Peruaud and Curtis, the doctors found that the notes and treatment plans did not support a finding of general impairment. The reviewing doctors also found that much of the assessments appeared to be a result of Plaintiff's self-reporting. Moreover, a review of raw data from Plaintiff's neuropsychological testing showed that Plaintiff tested well within normal limits on the vast majority of the tests. In fact, only 5 of 76 scores were in the impaired range, which shows less impairment than the 8-15 scores of impairment one would expect by chance. These findings alone are sufficient bases for denial.[9]

In his trial brief, Plaintiff points to the fact that (1) not all reviewing physicians were required to sign certifications of impartiality; (2) none of the physicians examined Plaintiff or spoke to Plaintiff's physicians; and (3) one of the reviewing physician never reviewed Dr. Castellon's report. Plaintiff also

---

[8] After 24 months of payments, the employee is considered disabled when Unum determines that, due to the same sickness or injury, the employee is unable to perform the duties of any gainful occupation for which the employee is reasonably fitted by education, training, or experience. (AR UA-CL-LTD-000132.) However, for disabilities due to mental illness, the Plan imposes a limited pay period up to 24 months. (AR UA-CL-LTD-000139.)

[9] The Court notes that some of the reviewing physicians (1) opined that Plaintiff's condition may be influenced by motivations of anger with Unum Group and hope for compensation through disability, and (2) questioned Dr. Curtis's objectivity, given his dual role of Plaintiff's treater and Worker's Compensation evaluator. In light of the objective measures discussed above, however, the Court need not address these issues.

questions Defendant's choice of reviewing physicians and their qualifications. The Court finds this argument unavailing. First, the record shows that attempts were made to contact Dr. Curtis at two different points of the investigation. Dr. Curtis never responded to either phone messages or letters. Second, while the reviewing physician's assessments clearly contradict those of Plaintiff's physicians, there is simply no evidence in the record to suggest that the reviewing physicians were any less objective or qualified than Plaintiff's physicians.

Plaintiff also points out that Defendant accepted and paid benefits on his short-term disability claim for the maximum duration, before denying Plaintiff's LTD claim. While this inconsistency raises questions that warrant exploration, the inconsistency, by itself, fails to render Defendant's denial of Plaintiff's LTD claim improper. Moreover, according to the record, Defendant explained to Plaintiff that, by the time the LTD claim was evaluated, Defendants had more and better information available, and that information was evaluated by independent subspecialty medical consultants. Therefore, the LTD claim evaluation was more comprehensive and accurate. There is no evidence in the record refuting this explanation.

Based on the foregoing, taking into consideration the existence of a structural conflict, the Court finds that Defendants' decision was not arbitrary and capricious. Therefore, Defendants did not abuse their discretion in denying Plaintiff's LTD claim.

For the reasons stated above, the Court **ENTERS JUDGMENT IN FAVOR OF DEFENDANTS**.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | slw |